**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**VINCENT D. WHITE, JR.,**

        **Petitioner,**

        **v.**

**WARDEN, ROSS
CORRECTIONAL INSTITUTION,**

        **Respondent.**

        **CASE NO. 2:17-CV-325
        JUDGE JAMES L. GRAHAM
        Magistrate Judge Chelsey M. Vascura**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* and amendment to the *Petition*, Respondent's *Return of Writ*, Petitioner's *Reply*, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's motion to file a *Reply* to the *Return of Writ* (*see* ECF No. 12) is **GRANTED**, and Petitioner's request for a stay of proceedings (ECF No. 12) is **DENIED**.

### I.  Facts and Procedural History

Petitioner challenges his convictions after a trial in the Franklin County Court of Common Pleas on one count of aggravated burglary, three counts of aggravated robbery, four counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, and one count of having weapons while under disability.  On January 21, 2014, the trial court imposed a term of life imprisonment without the possibility of parole.  The state appellate court summarized the facts as follows:

> On August 30, 2012, a Grand Jury indicted White and an alleged
> coconspirator. The Grand Jury charged White with one count of
> aggravated burglary, three counts of aggravated robbery, four

counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, and one count of possessing a firearm while under disability. All counts (except the weapon under disability count) contained specifications for the use of a firearm.

The counts in the indictment arose from a single incident. On July 29, 2012, four men were shot in a house located at 1022 East 17th Avenue in Columbus, Ohio. Keith Paxton (aka "Gutter") and Albert Thompson (aka "T") were killed in the attack. Juanricus Kibby and Miquel Williams suffered bullet wounds but recovered.

The case went to trial on October 28, 2013. At the trial, both surviving victims identified White as one of the two shooters. In addition, another witness, Jeffrey Harris, testified that White had told him beforehand about White's plan to rob the house and then afterwards offered Harris a share of the money. Kibby and Williams both had known White for a long time; yet, neither identified him the first time they spoke with police following the shooting. Harris, who was initially suspected of having some involvement in the crime, went to the police to clear his name, but he did not tell the police the story he told at trial about White telling him of his plan to rob the house.

White's co-defendant presented an alibi witness, who claimed that the codefendant was not present during the shooting. White admitted that he was at the house and shot some of the people there. However, he claimed that he shot in self-defense because, when he arrived to buy drugs, the four individuals who were subsequently deemed to be the victims, made him get on his knees at gunpoint and were robbing him. Forensic evidence regarding the direction and angles from which some of the victims were shot tended to contradict White's version of the events, as did the fact that White and the other shooter each fired at least six times and the four victims did not return fire. Thompson was shot as if he were getting up from a seated position, and Paxton was shot in the back shoulder. Only two guns were used in the shooting and neither were any of the guns in the possession of the house occupants.

On November 5, 2013, the trial concluded, and the jury began its deliberations. Two days later, the jury announced its verdict. The jury found White guilty on all counts. The trial court also found White guilty of having a weapon while under disability. The trial court held a sentencing hearing on January 22, 2014 and sentenced White to life in prison without parole.

*State v. White*, No. 14AP-160, 2015 WL 9393518, at *1-2 (Ohio App. 10th Dist. Dec. 22, 2015).

Represented by new counsel, Petitioner filed a timely appeal. He raised the following

assignments of error:

> [I.] THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BASED UPON THE ACTUAL AND POTENTIAL CONFLICTS OF INTERESTS THE DEFENDANT'S TRIAL COUNSEL HAD IN THIS CASE.
>
> [II.] THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURORS THAT IT HAD TO FIND THE DEFENDANT NOT GUILTY OF AGGRAVATED MURDER BEFORE IT COULD CONSIDER THE DEFENDANT'S GUILT OF THE LESSER–INCLUDED OFFENSE OF MURDER, THE SO–CALLED "ACQUITTAL FIRST" INSTRUCTION THAT WAS HELD TO BE IMPROPER IN STATE V. THOMAS, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), AND FURTHER ERRED WHEN IT INSTRUCTED ON THE AGGRAVATED MURDER CHARGES IN COUNTS SEVEN AND EIGHT WITHOUT ALSO INSTRUCTING ON THE LESSER OFFENSE OF MURDER AND DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO THESE INSTRUCTIONS.
>
> [III.] WHEN THE STATE CLAIMED THAT THE DEFENDANT FLED THE SCENE DUE TO A CONSCIOUSNESS OF GUILT, WHILE THE DEFENDANT MAINTAINED THAT HE FLED THE SCENE OF THE SHOOTING OUT OF FEAR FOR HIS SAFETY, IT WAS PREJUDICIAL CONDUCT FOR THE JUDGE, OVER OBJECTION, TO PICK A SIDE AND INSTRUCT THE JURY ONLY WITH RESPECT TO THE STATE'S THEORY OF GUILT AND TO INSTRUCT ONLY ON THE INFERENCES REQUESTED BY THE STATE AND TO EMPHASIS [sic] AND GIVE UNDUE PROMINENCE ONLY TO THE FACTS THAT SUPPORTED THE STATE'S THEORY.
>
> [IV.] THE TRIAL COURT ERRED WHEN IT VIOLATED THE RULES AGAINST HAVING EX PARTE COMMUNICATIONS WITH THE STATE WHERE THE COURT WAS TOLD EXTREMELY PREJUDICIAL ALLEGATIONS CONCERNING THE DEFENDANTS WHICH SO FRIGHTENED THE COURT

> THAT IT ORDERED, WITHOUT A PROPER HEARING, EXTRAORDINARY SECURITY MEASURES FOR THE COURTROOM AND THE TRIAL, AND THE ALLEGATIONS WERE SO PREJUDICIAL THAT THEY AFFICETED [sic] THE RIGHTS OF THE DEFENDANT TO A FAIR TRIAL FROM AN IMPARTIAL JUDGE.

*Id.* On December 22, 2015, the appellate court affirmed the judgment of the trial court. *Id.* On May 4, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. White*, 145 Ohio St.3d 1460 (Ohio 2015).

On April 17, 2017, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of counsel (claim one); that he was denied a fair trial when the judge issued an improper jury instruction and denied the effective assistance of counsel based on his attorney's failure to object (claim two); that the trial court improperly instructed the jury on the State's theory of guilt and gave undue prominence to facts supporting the government's theory of guilt (claim three); and that the trial court improperly issued extraordinary security measures, violating Petitioner's right to a fair trial by an impartial trial judge (claim four). *Petition* (ECF No. 3.) Petitioner also asserts that he was denied the effective assistance of counsel based on his attorney's conflict of interest. *Petitioner's Amendment to Petition for Writ of Habeas Corpus* (ECF No. 7.) It is the position of the Respondent that Petitioner's claims are procedurally defaulted or otherwise fail to present a basis for relief.

## II. Motion for Stay

In claim five, Petitioner asserts that he was denied the effective assistance of trial counsel, because his attorney, Javier Armengau, faced pending felony charges during the time of

4

his representation of the Petitioner in this case.[1]  Although Respondent argues otherwise, *see Return of Writ* (ECF No. 11, PAGEID #67), Petitioner plainly raised this same issue in the Ohio Court of Appeals.

Petitioner argued that he was denied his right to the effective assistance of counsel based on the actual and potential conflicts of interests of his attorney, because his attorney had been indicted on charges of rape, kidnapping, sexual battery, gross sexual imposition, and public indecency, and faced prosecution from the same entity.  *Brief of Defendant-Appellant* (ECF No. 11-1, PAGEID ##143, 160.)  Petitioner argued that the pending criminal charges created a potential conflict of interest, and that his attorney, the trial court, and the government had a duty to advise the Petitioner so that he could choose to proceed with different counsel or waive the potential conflict, unless an actual conflict existed.  (PAGEID ##162-63.)  Petitioner supported his claim by reference to *State v. Gillard*, 64 Ohio St.3d 304 (Ohio 1992), which in turn relies on federal law regarding the denial of the effective assistance of counsel based upon an alleged conflict of interest.  *See Wood v. Georgia,* 450 U.S. 261 (1981); *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475 (1978).  Petitioner also referred to other federal cases in support of his claim.  (PAGEID ##164-171; 179-180.)[2]

The state appellate court rejected the claim as follows:

---

[1] On July 7, 2014, Attorney Armengau was convicted after a jury trial in the Franklin County Court of Common Pleas on charges of public indecency, sexual battery, kidnapping, rape, and gross sexual imposition, and classified as a Tier III sex offender.  *See Exhibit B* (Doc. 12-1, PAGEID #1489-1492); *State v. Armengau*, No. 14AP-679, 2017 WL 2687434 (Ohio App. 10th Dist. June 22, 2017).

[2] Respondent also contends that Petitioner has waived this claim because he failed to raise it in the Ohio Supreme Court.  *See Return of Writ* (ECF No. 11, PAGEID #64-67.)  The record does not support this argument.  In his appeal to the Ohio Supreme Court, Petitioner again argued that the State had an obligation to notify him of the actual or potential conflict of interest caused by the fact that his attorney had been under indictment on serious felony charges at the time of his representation of the Petitioner.  (ECF No. 11-1, PAGEID #311-12.)  Petitioner argued that the appellate court could have taken judicial notice of the pending criminal charges against defense counsel, and that the case should be remanded for a determination of whether Petitioner had been warned about the potential conflict.  (*Id.*)  He again referred to *State v. Gilliard*, 64 Ohio St.3d at 304, and other federal cases in support of his claim. (PAGEID #312-13.)

White asserts that, at the time of the trial, his trial attorney, Javier Armengau, was under indictment in Franklin County and facing very grave challenges to his own freedom, finances, and license to practice law. White argues that this situation created a conflict of interest.

That is, White suggests that Armengau would have been conflicted over whether to devote time to preparing his own defense or that of his client; Armengau might have chosen to take a greater percentage of White's financial resources in fees to help finance his own defense rather than hire an investigator in White's case; and Armengau would have been reluctant to vigorously represent White for fear of angering the same prosecutor's office that was prosecuting him, or even, conversely, might have failed to engage in any plea-bargaining efforts in White's case out of an indignant or vengeful desire to gain a victory over the prosecutor's office.

White argues that there is nothing in the record to show that he was properly advised of the potential conflict of interest or that he waived this potential for conflict on the record or in writing. Plaintiff-appellee, State of Ohio, argues that there is no information in the record of this case regarding Armengau's indictment, conviction, or disciplinary proceedings.

"'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" *Morgan v. Eads*, 104 Ohio St.3d 142, 818 N.E.2d 1157, 2004–Ohio–6110, ¶ 13, quoting *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Though White's brief asserts facts about Armengau's difficulties, the record in this direct appeal contains no evidence or information whatsoever about Armengau's particular situation. Although White refers to the caption of Armengau's criminal case and the caption of his disciplinary case before the Supreme Court of Ohio, he does not expressly request that we take judicial notice of the same. Nevertheless, even if we were to take judicial notice of the fact that Armengau was indicted for a number of serious criminal offenses before White's trial and was convicted and imprisoned for them after White's trial, the record would still be devoid of any factual details regarding Armengau's licensure issues. Furthermore, there is nothing in the record of this direct appeal indicating White was unaware of Armengau's situation. In short, while we understand White's argument, that his counsel may have been distracted and conflicted by the fact that he was suffering severe legal and personal difficulties at the same time that he was engaged in litigating

> White's murder trial, we lack the necessary facts to fully consider such a matter in a direct appeal. A direct appeal, where the record is limited and where the record contains no mention of any of the relevant facts at issue, is not the vehicle to make such an argument.
>
> White's first assignment of error is overruled.

*White,* 2015 WL 9393518, at *2-3.

Petitioner requests a stay of proceedings in order to exhaust his claim regarding his attorney's alleged conflict of interest by filing a state post-conviction petition pursuant to O.R.C. § 2953.21. Respondent has not filed a response to Petitioner's request. Petitioner does not indicate the date of the filing of the post-conviction petition, nor has he provided a copy of this document; however, the docket of the Franklin County Clerk of Courts indicates that, on October 11, 2017, Petitioner filed a petition to vacate or set aside judgment of conviction or sentence in the state trial court. On November 30, 2017, the trial court denied the motion as untimely, because Petitioner filed the post-conviction petition approximately two years late. The Court is unable to determine whether Petitioner has filed an appeal from that decision.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Additionally, federal courts may not entertain "mixed petitions," *i.e.*, petitions that present both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). Federal courts have the discretion to stay a mixed petition in order to permit a petitioner to present his

unexhausted claim to the state courts, and then to return to federal court for review of all, now exhausted, claims. *Rhines v. Weber*, 544 U.S. 269 (2005). However, stays under these circumstances should be only sparingly used; stays are not appropriate, for example, when the unexhausted grounds are plainly meritless. *Id.* at 278. A petitioner seeking a stay to permit exhaustion of an unexhausted claim must demonstrate both good cause for having failed to exhaust his state court remedies and a potentially meritorious claim. *Id*. at 277–78.

Respondent does not argue that Petitioner's claim is unexhausted or procedurally defaulted based on his failure to pursue state post-conviction relief. Further, the time period for filing a post-conviction petition has now long since expired, and the record does not reflect that Petitioner will be able to meet the stringent requirements for consideration of his claim in an untimely post-conviction petition. To the contrary, the trial court dismissed Petitioner's post-conviction petition as untimely. Assuming that Petitioner has filed a timely appeal, it appears from the record that the state appellate court will affirm that decision under the provision of O.R.C. § 2953.23.[3] Under these circumstances, a stay of proceedings is not warranted. Further,

---

[3] O.R.C. § 2953.23 provides as follows:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

> (1) Both of the following apply:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Petitioner's claim is not potentially meritorious, as that term is defined under *Rhines* so as to justify a stay. *See Cauthon v. Warden, Marion Correctional Institution*, No. 2:17-cv-272, 2017 WL 3912724, at *8 (S.D. Ohio Sept. 7, 2017) (citing *Childers v. Warden, Chillicothe Correctional Institution*, No. 2:13-cv-991, 2014 WL 3828429, at *4 (S.D. Ohio Aug. 4, 2014) (citing *Toledo v. Banks,* No. 09–cv–614, 2010 WL 2620593, at *5 (S.D. Ohio June 25, 2010) (citing *Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010))); *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005); *Carter v. Friel*, 415 F. Supp. 2d 1314, 1321–22 (D. Utah 2006); *Scott v. Sheldon*, No. 3:08 CV 1837, 2009 WL 2982866 (N.D. Ohio September 11, 2009); *Sieng v. Wolfe*, No. 2:08-cv-0044, at *7, 2009 WL 1607769 (S.D. Ohio June 9, 2009); *Bailey v. Eberlin*, No. 2:08-cv-839, 2009 WL 1585006, at *7 (S.D. Ohio June 4, 2009)). In short, a stay of proceedings would not be warranted for Petitioner to pursue a motion that has little likelihood of success. *See*

---

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

If a petition filed pursuant to section 2953.21 of the Revised Code by a person who has been sentenced to death is denied and the person appeals the judgment, notwithstanding any law or court rule to the contrary, there is no limit on the number of pages in, or on the length of, a notice of appeal or briefs related to an appeal filed by the person. If any court rule specifies a limit on the number of pages in, or on the length of, a notice of appeal or briefs described in this division or on a prosecuting attorney's response or briefs with respect to such an appeal and a person who has been sentenced to death files a notice of appeal or briefs that exceed the limit specified for the petition, the prosecuting attorney may file a response or briefs that exceed the limit specified for the answer or briefs.

*id.*; *Battiste v. Miller*, No. 1:17-cv-128, 2017 WL 1907262, at *5 (N.D. Ohio April 18, 2017) (citation omitted) (where an unexhausted claim is likely procedurally defaulted, a stay and abeyance would be fruitless).

Therefore, Petitioner's request for a stay is **DENIED**.

### III. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This requires the petitioner to present "the same claim under the same theory" to the state courts before raising it on federal habeas review. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).

One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must determine whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that the petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner must demonstrate cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.), *cert. denied sub nom. Leroy v. Morris*, 474 U.S. 831 (1985).

In light of the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id*. at 452 (quoting *Murray*, 477 U.S. at 479. That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if the claim is procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S. Ct. 2546, 115 L. Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v.* Boerckel, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer

available. *Id*. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id*. at 854, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L. Ed. 761 (1950)).

*Id*. at 452–53.

If, after considering all four factors of the *Maupin* test, the Court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96)), *cert. denied*, 135 S. Ct. 1545 (2015).

In claim one, Petitioner asserts that he was denied the effective assistance of counsel because his attorney did not listen to tape recordings of police witness interviews for cross-examination of prosecution witnesses with prior inconsistent statements; failed to request a mistrial or request an inquiry regarding a juror's disclosure during trial that she was related to the victim's family; failed to conduct adequate impeachment of prosecution witnesses; lacked knowledge regarding cross-examination; failed to object to instances of prosecutorial misconduct; and failed to object to issuance of an "acquittal first" jury instruction. *Petition* (ECF No. 3, PAGEID #24.) With the exception of the last of these claims, Petitioner did not raise the foregoing issues on direct appeal, where he was represented by new counsel. Further, although Petitioner did assert on direct appeal that he was denied the effective assistance of counsel based

on his attorney's failure to object to an "acquittal first" jury instruction, he thereafter failed to raise this same claim on appeal to the Ohio Supreme Court. He has thereby waived this claim for review in these proceedings. Likewise, in claim four, Petitioner asserts that the trial court violated rules against *ex parte* communications and improperly imposed extraordinary security measures during trial, thereby depriving Petitioner of his right to an impartial judge. *Petition* (ECF No. 3, PAGEID #30.) However, Petitioner did not raise this same claim in his appeal to the Ohio Supreme Court.

Petitioner maintains that he presented all of his claims regarding the denial of the effective assistance of trial counsel on direct appeal, by including them as instances establishing that he had established prejudice from counsel's alleged conflict of interest. This Court is not persuaded that Petitioner has thereby preserved these issues as independent claims for relief in these proceedings.[4] Moreover, Petitioner did not raise these same issues on appeal to the Ohio Supreme Court. (ECF No. 11-1, PAGEID #311-16.)

Petitioner may now no longer present any of the foregoing claims to the state courts because of Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St. 3d 112, 115 (1982); *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman*, 501 U.S. at 732–33. To be

---

[4] The Court will address these issues in conjunction with Petitioner's claim that his attorney suffered a conflict of interest.

"adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001), *cert. denied sub nom. Coleman v. Bagley*, 535 U.S. 1031 (2002); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000) *cert. denied*, 531 U.S. 1082 (2001); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d 16, 18 (1981). Additionally, the doctrine *of res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In claim two, Petitioner asserts that the trial court improperly issued an "acquittal first" jury instruction, advising the jury that it had to find Petitioner not guilty of aggravated murder before it could return a guilty verdict on the lesser-included offense of murder. *Petition*

(PAGEID #26.) Petitioner raised this same claim on direct appeal; however, the appellate court reviewed the claim for plain error only, due to Petitioner's failure to object:

> B. Second Assignment of Error—Whether the Trial Court Gave an Impermissible Acquit First Instruction
>
> The Supreme Court of Ohio has held:
>
> > If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense.
>
> *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph three of the syllabus. The Supreme Court adopted this rule because, though the risk of coerced decisions may be present in any jury deliberation, an "acquittal first" instruction exacerbates such risk. *Id.* at 219-20. "'When the jury is instructed in accordance with the "acquittal first" instruction, a juror voting in the minority probably is limited to three options upon deadlock: (1) try to persuade the majority to change its opinion; (2) change his or her vote; or (3) hold out and create a hung jury.'" *Id.* at 220, 533 N.E.2d 286, quoting *State v. Allen*, 301 Ore. 35, 39, 717 P.2d 1178, 1180 (1986).
>
> In this case, the trial court instructed on the offense of aggravated murder and then gave the following instruction:
>
> > If you find the State has failed to prove prior calculation and design beyond a reasonable doubt, you must find the Defendant not guilty of Aggravated Murder and consider the lesser offense of Murder.
>
> (Tr. 1012.) White argues that this constitutes a prohibited "acquit first" instruction in violation of Thomas. (Appellant's Brief, 39–46.) Nonetheless, the state points out that both this court and the Supreme Court of Ohio have previously found that nearly identical instructions were not so improper as to require reversal, even though they were poorly written and though better instructions would have incorporated the "inability to agree" language adopted by Thomas. *See, e.g., Thomas* at 220–21, 533 N.E.2d 286; *State v. Wright*, 10th Dist. No. 00AP–985 (Nov. 13, 2001); *State v. Greene*, 10th Dist. No. 90AP–646 (Mar. 31, 1998); *State v.*

*Hawkins,* 10th Dist. No. 97AP–740 (Mar. 24, 1998); *State v. Roe*, 10th Dist. No. 92AP–334 (Sept. 22, 1992). As the Supreme Court outlined in *Thomas*, the preferred approach upon giving instructions to a jury under these circumstances would have been a holding that is easily adaptable to an instruction:

> [You, the] jury must unanimously agree that the defendant is guilty of [aggravated murder] before returning a verdict of guilty on that offense. If [you are] unable to agree unanimously that a defendant is guilty of [aggravated murder], [you] may proceed to consider [the] lesser included offense [of murder] upon which evidence has been presented. [You are] not required to determine unanimously that the defendant is not guilty of the crime [of aggravated murder] before [you] consider a lesser included offense.

*Thomas* at 220, 533 N.E.2d 286, quoting and adopting *State v. Muscatello*, 57 Ohio App.2d 231, 387 N.E.2d 627 (8th Dist.1977), paragraph three of the syllabus. Moreover, the Ohio Jury Instructions include their own version of what amounts to the *Thomas* instruction:

> If all of you are unable to agree on a verdict of either guilty or not guilty of (insert greater offense charged ), then you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser included offense of (insert lesser offense ).

Ohio Jury Instructions, CR Section 425.09 (Rev. May 2, 2015).

In this case, trial counsel failed to object to the trial court's instruction or to request a proper Thomas instruction. Thus, we cannot take notice of this error unless we find that it constituted plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). The Supreme Court of Ohio has recently reiterated that:

> [This rule places] "three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim. R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected

> 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial."
>
> *State v. Lynn*, 129 Ohio St.3d 146, 950 N.E.2d 931, 2011–Ohio–2722, ¶ 13, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *see also State v. Noling*, 98 Ohio St.3d 44, 781 N.E.2d 88, 2002–Ohio–7044, ¶ 62. In this case, considering existing case law in which similar instructions to those given here were not reversed, we cannot say that this error is plain. Under these circumstances, we overrule White's second assignment of error.

*White,* 2015 WL 9393518, at *4-5.

Petitioner, therefore, has procedurally defaulted this claim for review in these proceedings. *See Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *12 (N.D. Ohio Feb. 9, 2017) (citing *Durr v. McLaren*, No. 15-1346, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015)). The United States Court of Appeals for the Sixth Circuit has held that Ohio's contemporaneous-objection rule constitutes an adequate and independent state ground to preclude federal habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334-35 (6th Cir.) (citation omitted), *cert. denied sub nom. Wogenstahl v. Robinson*, 568 U.S. 902 (2012); *Awkal v. Mitchell*, 613 F.3d 629, 648-49 (6th Cir. 2010) *cert. denied*, 562 U.S. 1183 (2011). The state appellate court's plain error review does not constitute a waiver of the state's procedural default rules. *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006), *cert. denied sub nom. Keith v. Houk*, 549 U.S. 1308 (2007).

Thus, Petitioner has waived claims one, two, and four. He may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

"[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the

law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008). Petitioner has failed to do so here.

Petitioner states that he could not raise claim two or four in the Ohio Supreme Court because the Rules of Practice of the Ohio Supreme Court impose a fifteen page limit on the memorandum of jurisdiction. *See* Ohio S. Ct. Prac. R. 7.02(B)(1). Alternatively, Petitioner asserts the denial of the effective assistance of appellate counsel as cause for these procedural defaults. (ECF No. 12-1, PAGEID #1476.) However, page limitations did not prevent Petitioner from raising his claims in the Ohio Supreme Court as separate propositions of law. Moreover, attorney error cannot constitute cause for Petitioner's failure to raise an issue in the Ohio Supreme Court where Petitioner had no right to counsel in such proceeding. *See Barkley v. Konteh*, 240 F. Supp. 2d 708, 713-14 (N.D. Ohio Dec. 13, 2002) (citing *Coleman,* 501 U.S. at 751-53; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987))(other citations omitted). Petitioner has failed to establish cause for his procedural defaults.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup,* the Supreme Court held

that a credible showing of actual innocence was sufficient to authorize a federal court in reaching

the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317.

However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway

through which a habeas petitioner must pass to have his otherwise barred constitutional claim

considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception to procedural default allows a petitioner to pursue his

constitutional claims if it is "more likely than not" that new evidence—not previously presented

at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter*

*v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained

this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S. Ct. 851, 130 L. Ed. 2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt*." Id.* at 327, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. 851, 130 L. Ed. 2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted).  Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural defaults.

## IV.  Merits

### A.  Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

**B. Claim Three**

In claim three, Petitioner asserts that he was denied a fair trial because the trial court issued an improper jury instruction regarding his flight from the scene, emphasizing the prosecutor's theory of guilt rather than advising the jury that if another motive prompted his conduct, or "if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose." (ECF No. 12-1, PAGEID #1481.)

The state appellate court rejected this claim as follows:

> C. Third Assignment of Error—Whether the Trial Court Erred in Instructing that Flight Could be Considered as Evidence of Guilt Where Defendant Claimed Self–Defense and Presented Other Factual Explanations for his Flight
>
> At trial, it was undisputed that White left the scene of the shooting on foot, disposed of the gun in the trash, checked into a hotel under someone else's name, and stayed there for several days, spending time with his daughter and consulting with an attorney before voluntarily turning himself in to police. The prosecution argued that this behavior was not the behavior of a person who had acted in self-defense and that it showed consciousness of guilt. The defense argued that White fled the scene initially because he was afraid for his life and that he stayed in the hotel under an assumed name to give himself the opportunity to retain and consult with a lawyer and spend some time with his daughter before surrendering himself. The trial court, over objection by the defense, instructed the jury as follows:
>
>> In this case, there was evidence that the Defendant Vincent White fled from the scene. You are aware—I mean—you are instructed that you may not presume the Defendant guilty from such evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused's flight and related conduct can be considered evidence of consciousness of guilt and thus of guilt itself.
>
> (Tr. 1021.)
>
> White argues that it was error for the trial court to have given an instruction on flight in this case because there were explanations

for his behavior after the shooting other than consciousness of guilt and that the trial court, in giving such an instruction, was granting a judicial imprimatur of the prosecution's view of the facts. Essentially, White argues that, in giving that instruction and only that instruction, the judge picked a side and implicitly recommended a factual inference to the jury. The state responds that giving a flight instruction is a matter of discretion, and the word "may" in the instruction leaves open the possibility that the jury could have chosen not to infer "consciousness of guilt" and instead credit White's explanation. The determination of whether or not to give a flight instruction is a matter within the trial court's discretion. *See, e.g., State v. Hill*, 8th Dist. No. 98366, 2013–Ohio–578, ¶ 48–49. Under typical circumstances, as the state argues, if there is sufficient evidence to show that a defendant attempted to avoid apprehension, a flight instruction is proper. *Id.* at ¶ 49. However, White does not argue that there was insufficient evidence in the record to justify an instruction about flight; he argues that it was improper to give a flight instruction that endorsed only the inference preferred by the state where the facts supported more than one inference about his conduct, and each side argued for a different inference.

In support of his assignment of error, White cites cases regarding jury instructions about factual inferences that may be drawn from a refusal to take a breath test in an OVI case. (Appellant's Brief, 48–53, citing *Maumee v. Anistik*, 69 Ohio St.3d 339, 632 N.E.2d 497 (1994); *Columbus v. Maxey*, 39 Ohio App.3d 171, 530 N.E.2d 958 (10th Dist.1988).) The facts in these cases are not analogous to the facts in the case before us. Here, after shooting the victims, White left the scene, disposed of the gun, stayed in a hotel under another's name, and turned himself in.

More factually analogous to the case at bar is *State v. Shepherd*, 10th Dist. No. 07AP–223, 2007–Ohio–5405. In that case, the appellant was charged with robbery. The evidence presented at trial showed that the appellant and his passenger drove away from the scene after the passenger robbed a gas station. The appellant admitted that he was driving the car but that he had picked up the passenger on the side of the road and knew him only as "Willie." *Id.* at ¶ 3. On appeal, the appellant argued that the trial court erred when it instructed the jury on flight as evidence of guilt by giving the following instructions: "Flight or its analogous conduct may be considered by you as consciousness of guilt." *Id.* at ¶ 5. The appellant argued that the court should have given the instruction outlined in the Ohio Jury InstructionsFN1 at the time. This court determined, after comparing the given instruction to the instruction

suggested by the appellant, that the trial court did not abuse its discretion. The court noted that, while the Ohio jury instruction is "more detailed and explicit, the instruction given by the trial court is not incorrect and does not conflict with the suggested OJI instruction." *Id.* at ¶ 8. The court further observed that the given jury instruction "substantially mirrors the language from paragraph six of the syllabus in *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969), in which the court stated that "'flight from justice, and its analogous conduct, have always been indicative of a consciousness of guilt.'" *Shepherd* at ¶ 18. The court also observed that: (1) the given instruction indicated that the jury "may" find flight demonstrated consciousness of guilt and left open the possibility that there may have existed other motivations to move appellant to leave the scene; and (2) jury instructions must be considered as a whole and the court had also instructed the jury that it was its sole function to judge the disputed facts.FN2 *Id.*

In *Eaton*,FN3 the appellant was charged with first-degree murder during an attempted robbery. The appellant claimed the shooting was accidental. Evidence was presented that the appellant left the scene "without attempting to aid the person whom he claims was accidentally killed." *Id.* at 160. In considering whether the jury was properly instructed on the element of intent to commit homicide, the Supreme Court held that: "Flight from justice, and its analogous conduct, may be indicative of a consciousness of guilt." *Id.* at paragraph six of the syllabus. The Supreme Court noted that: " 'Flight from justice, and its analogous conduct, has always been indicative of a consciousness of guilt. It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself.' " *Id.* at 160, quoting 2 Wigmore, Evidence, Section 276 (3 Ed.) at 111, and cases cited.

In *State v. Taylor*, 78 Ohio St.3d 15, 29–30, 676 N.E.2d 82 (1997), the appellant was charged with aggravated murder. Evidence was presented at the trial that, after shooting the victim, the appellant and an accomplice left the scene and while leaving, the appellant yelled out of the car window: "It was self-defense." The Supreme Court of Ohio considered whether the following instruction was given in error: "Flight, in and of itself, does not raise a presumption of guilt, but unless satisfactorily explained, it tends to show consciousness of guilt or a guilty connection with the crime." *Id.* at 27, 676 N.E.2d 82. The Supreme Court held that, despite the appellant's claims, the instruction was "neither arbitrary nor unreasonable, and did not create an improper mandatory

presumption." *Id*. The Supreme Court quoted from *Eaton* in stating: "'Flight from justice * * * may be indicative of a consciousness of guilt.'" *Id*.

In consideration of our precedent in *Shepherd* and the Supreme Court's observations in *Eaton, Harris,* and *Taylor,* we cannot say that the trial court abused its discretion in giving this instruction. Accordingly, we overrule White's third assignment of error.

FN1:  The Ohio Jury Instructions, Section 405.25 (2005), at the time provided:

CONSCIOUSNESS OF GUILT. Testimony has been admitted indicating that the defendant [fled the scene]. * * * You are instructed that [flight] alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) * * * of guilt. If you find that the facts do not support that the defendant [fled], or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) * * * of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime[ ] charged. You alone will determine what weight, if any to give to this evidence.

*Shepherd* at ¶ 6.

Today, Ohio Jury Instructions, CR Section 409.13 (Rev. Aug. 17, 2005) reads:

CONSCIOUSNESS OF GUILT. Testimony has been admitted indicating that the defendant (fled the [scene] * * *. You are instructed that (describe defendant's conduct) alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) (awareness) of guilt. If you find that the facts do not support that the defendant [fled], or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) (an awareness) of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the

crime(s) charged. You alone will determine what weight, if any, to give to this evidence.

FN2: The trial court in the case at bar also instructed the jury that it was the function of the jury to judge the disputed facts. "You decide the disputed facts, and the court provides the instructions of law." (Tr. 989.) The court further instructed: "You are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence." (Tr. 992.)

FN3: In a more recent case, *State v. Harris*, 142 Ohio St.3d 211, 2015–Ohio–166, the Supreme Court of Ohio noted that "[c]onsciousness of guilt is no different from guilt itself." *Id.* at ¶ 34, citing *Eaton; Williams*.

*White*, 2015 WL 9393518, at *5-7.

However, errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive the petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551–52 (6th Cir. 1986), *cert. denied sub nom. Wood v. McMackin*, 479 U.S. 1036 (1987); *Thomas v. Arn*, 704 F.2d 865, 868–69 (6th Cir. 1983).

Because jury instruction errors typically are matters of state law, the standard for demonstrating that a jury instruction caused constitutional error in a habeas proceeding "is even greater than the showing required to establish plain error on direct appeal." *Henderson*, 431 U.S. at 154, 97 S. Ct. 1730. A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given.... An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id. at 155, 97 S. Ct. 1730.

*Stallings v. Bagley*, 561 F. Supp. 2d 821, 855 (N.D. Ohio 2008). A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The record fails to reflect such circumstances here.

Moreover, the United States Court of Appeals for the Sixth Circuit, in an unpublished decision, *Drake v. Superintendent, Trumbull Correctional Inst.*, No. 95-4018, 1997 WL 14422 (6th Cir. January 14, 1997), has rejected the argument that instructing the jury that flight, "unless satisfactorily explained ... tends to show consciousness of guilt or a guilty connection with the alleged crime" and may be considered in determining guilt improperly shifts the burden of proof to the defendant in a criminal case, stating as follows:

> This instruction is constitutionally sound; it unambiguously states that flight, in and of itself, does not raise a presumption of guilt. The instruction clearly communicates that the jury "may" consider unexplained flight in determining guilt or innocence but is not required to do so. The jury is still free to disregard any evidence of flight in determining guilt. The instruction is consistent with Ohio law, in that a jury may consider flight as indicative of consciousness of guilt.

*Id*. at *7; *see also Taylor v. Mitchell*, 296 F. Supp. 2d 784, 809-10 (N.D. Ohio 2003), *declined to follow on other grounds by Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

Claim three fails to provide a basis for relief.

## C.  Claim Five

In claim five, Petitioner asserts that he was denied the effective assistance of counsel because his attorney suffered a conflict of interest in view of the pending felony charges against him.  In support, Petitioner refers to his attorney's subsequent suspension from the practice of law and the motion for interim remedial suspension by the Columbus Bar Association.  *See In re Armengau*, 140 Ohio St. 3d 1247 (2014); *Columbus Bar Assn. v. Armengau*, 139 Ohio St. 3d 1469 (2014).  Petitioner argues that defense counsel, the trial court, and the prosecution had a duty to advise Petitioner regarding this conflict or potential conflict of interest, and absent Petitioner's waiver, reversal is required.  Alternatively, Petitioner maintains that the record

establishes that he has established prejudice from counsel's conflict of interest. (ECF No. 12-1, PAGEID ##1472-72.)

As discussed above, the state appellate court rejected Petitioner's claim and concluded that nothing in the record indicated that Petitioner was unaware of Armengau's situation and that it lacked the necessary facts to fully address the issue on direct appeal. *White,* 2015 WL 9393518, at *2-3. "A direct appeal, where the record is limited and where the record contains no mention of any of the relevant facts at issue, is not the vehicle to make such an argument." *Id*. at *3. However, Respondent does not argue that Petitioner's claim is procedurally defaulted on this basis. *See Return of Writ* (ECF No. 11, PAGEID ##64-67.) "[P]rocedural default is an affirmative defense that must be asserted by a respondent at the earliest opportunity or it will be waived." *Ahmed v. Houk*, No. 2:07-cv-658, 2014 WL 2709765, at *28 (S.D. Ohio June 16, 2014) (citing *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Gray v. Netherland*, 518 U.S. 152, 166 (1996). In any event, the record reflects that Petitioner's claim lacks merit.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. *See also Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness.'" *Poole v.*

*MacLaren*, 547 F. App'x 749, 755 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 687; quoting

*Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011), *cert. denied*, 566 U.S. 947 (2012))(internal

quotation marks omitted), *cert. denied*, 135 S. Ct. 122 (2014). To make such a showing, a

petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts

must] 'indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009)

(quoting *Strickland,* 466 U.S. at 689).

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by *Strickland* and § 2254(d) are both 'highly
> deferential,' id., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7,
> 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply
> in tandem, review is 'doubly' so, *Knowles,* 556 U.S., at 123, 129 S.
> Ct. at 1420. The Strickland standard is a general one, so the range
> of reasonable applications is substantial. 556 U.S. at 123. Federal
> habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under
> § 2254(d). When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable. "The question is whether there
> is any reasonable argument that counsel satisfied *Strickland's*
> deferential standard."

*Premo v. Moore*, 562 U.S. 115, 122-23 (2011). "The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable[;] [t]his is different from asking whether

defense counsel's performance fell below *Strickland's* standard." *Harrington,* 562 U.S. at 101.

A criminal defendant has a Sixth Amendment right to conflict-free representation.

*Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59,

62-63 (6th Cir. 1982)), *cert. denied*, 549 U.S. 1264 (2007). A claim that counsel labored under a

conflict of interest is at base a claim governed by *Strickland*. *Ahmed*, 2014 WL 2709765, at *25

(citing *Brooks v. Bobby*, 660 F.3d 959, 963-64 (6th Cir.), *cert. denied*, 565 U.S. 1047 (2011)).  In order to obtain relief, a petitioner must establish that his attorney "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."  *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005) (citations omitted).  In certain contexts, prejudice is presumed where counsel labored under an actual conflict of interest.  *See Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 487–91 (1978).  The presumption of prejudice applies only where the conflict arises from an attorney's representation of multiple concurrent or co-defendants in the same or separate proceedings.  *See Ahmed*, 2014 WL 2709765, at \*25 (citing *Mickens v. Taylor*, 535 U.S. 162, 174–76  (2002); *Satterwhite v. Texas*, 486 U.S. 249, 256–58 (1988); *Jalowiec v. Bradshaw*, 657 F.3d 293, 314–15 (6th Cir. 2011), *cert. denied sub nom. Jalowiec v. Robinson*, 568 U.S. 828 (2012); *McElrath v. Simpson*, 595 F.3d 624, 630–31 (6th Cir. 2010); *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–54 (6th Cir. 2006); *Gillard*, 445 F.3d at 890–91; *Whiting v. Burt*, 395 F.3d 602, 617–20 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 705–09 (6th Cir. 2004); *Moss v. United States*, 323 F.3d 445, 460–61 (6th Cir.), *cert. denied*, 540 U.S. 879 (2003); *Smith v. Hofbauer*, 312 F.3d 809, 814–16 (6th Cir. 2002), *cert. denied*, 540 U.S. 971 (2003)).

That said, "[t]he argument is not frivolous that a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client."  *Reyes-Vejerano v. United States,* 276 F.3d 94, 99 (1st Cir.), *cert. denied*, 537 U.S. 985 (2002).

> A lawyer in these circumstance[s], while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.

*Armienti v. United States*, 234 F.3d 820, 825 (2nd Cir. 2000). The United States Court of

Appeals for the Sixth Circuit has held that "[i]t is well-established that a conflict of interest may

arise where defense counsel is subject to a criminal investigation." *Moss*, 323 F.3d at 472 (citing

*Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993)) (no actual conflict of interest where

defense counsel faced state charges and defendant faced federal charges). *See also United States*

*v. Gonzales*, No. 5:08-cr-250, 2013 WL 6191363, at *3 (N.D. Ohio Nov. 26, 2013) ("A conflict

of interest will exist if the client and his attorney are being investigated and prosecuted by the

same office") (citing *Taylor*, 985 F.2d at 844).

> Other circuits that have found an actual conflict under analogous
> circumstances have also emphasized the fact that the same office
> was prosecuting or investigating both the attorney and client. *See,*
> *e.g., Levy,* 25 F.3d at 156 (2d Cir. 1994) (finding actual conflict for
> several reasons, including attorney's prosecution on unrelated
> charges by same office prosecuting defendant); *Thompkins v.*
> *Cohen*, 965 F.2d 330, 332 (7th Cir. 1992) (presuming that an
> actual conflict may arise when defendant's lawyer is under criminal
> investigation by the same prosecutor's office, but finding no
> adverse effect); *United States v. McLain*, 823 F.2d 1457, 1463–64
> (11th Cir. 1987) (finding actual conflict where attorney was under
> investigation by the same United States Attorney's office
> prosecuting the defendant and attorney had interest in prolonging
> the trial to delay his own indictment), overruled on other grounds
> as recognized by *United States v. Watson*, 866 F.2d 381, 385 n. 3
> (11th Cir. 1989).

*United States v. Baker*, 256 F.3d 855, 861-62 (9th Cir. 2001). However, the petitioner must

establish that an actual conflict of interest adversely affected his defense. *Chester v. Horn*, No.

99-4111, 2013 WL 2256218, at *4 (E.D. Penn. May 22, 2013); *see also United States v. Beasley*,

27 F. Supp. 3d 793, 818-19 (E.D. Mich. June 12, 2014) (citing *Moss*, 323 F.3d at 471-73)

(conflict of interest claim fails where the petitioner cannot demonstrate any adverse effect or

prejudice as a result of the alleged conflict). In other words, Petitioner must "demonstrate that

there was an adverse impact, which had a probable negative effect on his case." *Chester*, 2013

WL 2256218, at *4. "In doing so, Petitioner must show actual actions, or inactions, that counsel took or failed to take" based on the pending charges against him. *Id.* Petitioner has failed to do so here.

The record does not support Petitioner's claims that defense counsel failed to review summaries of police interviews with prosecution witnesses, conducted an inadequate cross-examination, or demonstrated a lack of knowledge regarding cross-examination, or that Petitioner was prejudiced by those actions or omissions. Notably, evidence of Petitioner's guilt was substantial. Additionally, the trial court removed the juror who disclosed that she might be related to some of the victims at counsel's request. *Transcript* (ECF No. 11-4, PAGEID #514.) Further, nothing in the record reflects that the juror at issue made any inappropriate statements based on her purported relationship to a person sitting in the audience prior to her removal, that counsel acted unreasonably in conducting further inquiry on that issue, or that Petitioner was prejudiced by the juror's temporary presence.[5] Likewise, the record does not demonstrate that Petitioner was prejudiced by his attorney's failure to object to Juanricus Kibby's testimony regarding his telephone conversation with the Petitioner. *Transcript* (ECF No. 11-4, PAGEID #666). It does not appear that such testimony would have been inadmissible, and Petitioner does not indicate otherwise. Similarly, the record does not reflect that Petitioner can establish prejudice based on Miquel Williams's testimony on re-direct that the only thing the prosecutor

---

[5] The juror indicated that she noticed her cousin in the audience who she had only seen once previously. *Transcript* (ECF No. 11-3, PAGEID #503-04.)

> My mom, she has a lot of family or people that she say is family, and sometimes we really aren't family, so that's the way I know Danielle, from my mother. I've seen her.
>
> I don't know where I seen you at years ago.
>
> I seen her – I'm not sure if it was a gathering or a cookout my mom had or something like that.

(ECF No. 11-3, PAGEID #506.) She denied that it would sway her opinion in the case, stating "I don't even really know which side she's on right now." (PAGEID #504.) She indicated that she could remain fair and impartial. (PAGEID #507.)

had ever asked him to do was to be honest and to be polite or the prosecutor's reference to this testimony during closing argument. (*See* ECF No. 11-5, PAGEID #873;[6] ECF No. 11-8, PAGEID #1335).[7] The trial court overruled defense counsel's objection to the prosecutor's statement that prosecution witnesses had been "honest" during closing argument. (ECF No. 11-8, PAGEID #1272.) Moreover, the state appellate court indicated that the trial court's jury instructions were appropriate under Ohio law. *White*, 2015 WL 9393518, at *4 ("both this court and the Supreme Court of Ohio have previously found that nearly identical instructions were not so improper as to require reversal, even though they were poorly written . . ."). Likewise, in view of the facts of this case, Petitioner cannot establish prejudice from trial counsel's elicitation of his testimony that he purchased drugs from Juanricus Kibby and supported himself by selling drugs during the time at issue. (ECF No. 11-7, PAGEID #1149.)

As noted by the state appellate court, the record does not indicate whether the Petitioner knew that his attorney was facing criminal charges during the time of his representation of the Petitioner. However, "there is no affirmative duty to inquire into a possible conflict of interest

---

[6] Williams testified that he had been at the house on 1022 East 17th Avenue on the date at issue visiting with his friends, "chilling" and getting high on weed. *Transcript* (ECF No. 11-5, PAGEID ##830-32.) He had known Petitioner for a couple of years. (PAGEID #832.) Petitioner and the co-defendant entered through the back door. (PAGEID #835.) They asked for some weed, and then Petitioner asked to go to the bathroom. (PAGEID #838.) He came out shooting. (PAGEID #839.) Petitioner shot Albert Thompson, aka "T" in the chest. (PAGEID #839.) Williams was shot in the hip. (PAGEID #841.) When questioned by the police, Williams did not provide them with any information, because he intended to shoot the Petitioner. (PAGEID ##846-47.) A couple months later, after Williams was arrested on other charges, he spoke with the prosecutor. (PAGEID ##858-59.) Williams acknowledged on cross-examination that his testimony differed from the statement(s) he had given to the police. (*See, e.g.*, PAGEID ##859-60.) On re-direct, Williams denied being made any promises by the prosecution in return for his testimony against the Petitioner and indicated that she had told him to be honest and polite. (PAGEID ##872-73.)

[7] The prosecutor stated as follows, in relevant part, during closing argument:

> Mr. Ireland wants you to believe that Miquel Williams is lying to get out of jail 12 days early. I would submit to you that that is ridiculous. The man told you he got a hundred-eighty-day sentence. He told you he didn't want to come out here and testify. We talked about the fact that I said I would talk to his judge if he did come out and testify. What were the two things I asked him to do? Tell the truth and be polite. For 12 days, you're going to frame two men for murder for 12 days in the workhouse? Ridiculous.

*Transcript* (ECF No. 11-8, PAGEID #1335.)

34

and [] a defendant must demonstrate that an actual conflict of interest adversely affected the adequacy of representation unless a trial court fails to afford the opportunity to do so." *Smith v. Anderson,* 505 F. Supp. 642, 651 (E.D. Mich. 1980). The United States Court of Appeals for the Sixth Circuit has rejected the argument that a trial court's failure to inquire into an alleged conflict requires automatic reversal of a conviction. *See Moss*, 323 F.3d at 470-71 ("the trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which the court knew or reasonably should have known, does not automatically require reversal of the conviction. . .") (citing *Mickens v. Taylor*, 535 U.S. 162 (2002)).

> [A] proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan* mandated inquiry, makes little policy sense . . . . The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any way renders the verdict unreliable. Nor does the trial judge's failure to make the *Sullivan* mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at trial.
>
> *Mickens,* 122 S. Ct. at 1246, 122 S. Ct. 1237 [sic]. In sum, "the trial judge's failure to inquire into a suspected conflict is not the kind of error requiring a presumption of prejudice." *Mickens*, 122 S. Ct. at 1247, 122 S. Ct. 1237 [sic] (Kennedy, J., concurring).

*Moss,* 323 F.3d at 471. *See also United States v. Beasley*, 27 F. Supp. 3d 793, 808 (E.D. Mich. 2014) (citations omitted).

Claim five is without merit.

## V. Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's motion to file a *Reply* to the *Return of Writ* (*see* ECF No. 12) is **GRANTED** and Petitioner's request for a stay of proceedings (ECF No. 12) is **DENIED**.

# PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*___
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE