**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

VINCENT D. WHITE, JR.,

                      Petitioner,           :    Case No. 2:17-cv-325

     - vs -                         District Judge James L. Graham
                                           Magistrate Judge Michael R. Merz

WARDEN, Ross
  Correctional Institution,

                                   :
              Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus, brought by Petitioner under 28 U.S.C. § 2254, is before the Court on remand from the United States Court of Appeals for the Sixth Circuit.  Counsel who represented Petitioner on appeal has continued the representation in this Court *pro bono publico.*

**Procedural Posture of the Case**

The Court dismissed this case on March 12, 2018 (ECF Nos. 23 and 24).  Petitioner appealed and the circuit court reversed. *White v. Warden, Ross Corr. Inst.,* 940 F.3d 270 (6th Cir. 2019)(copy of slip opinion at ECF No. 36).  The Supreme Court then denied Respondent's petition for writ of certiorari *sub nom. Morgan, Warden, v. Vincent D. White, Jr.,* 140 S. Ct. 2826 (June 2, 2020, slip opinion at ECF No. 40, 41).  The Sixth Circuit then issued its Mandate (ECF No. 43), returning jurisdiction to this Court.

1

Magistrate Judge Vascura granted Petitioner's motions to expand the record and for an

evidentiary hearing (ECF No. 54), but on Joint Motion of the parties vacated the order for

evidentiary hearing, accepting the parties' stipulation instead, and set a briefing schedule (ECF

No. 56).  After briefing was complete, the Magistrate Judge reference of the case was transferred

to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 60).

The parties have stipulated that the Ohio Court of Appeals for the Tenth District found the

following facts on direct appeal:

> [*P2]  On August 30, 2012, a Grand Jury indicted White and an
> alleged coconspirator. The Grand Jury charged White with one
> count of aggravated burglary, three counts of aggravated robbery,
> four counts of aggravated murder, two counts of attempted murder,
> two counts of felonious assault, and one count of possessing a
> firearm while under disability. All counts (except the weapon under
> disability count) contained specifications for the use of a firearm.
>
> [*P3]  The counts in the indictment arose from a single incident. On
> July 29, 2012, four men were shot in a house located at 1022 East
> 17th Avenue in Columbus, Ohio. Keith Paxton (aka "Gutter") and
> Albert Thompson (aka "T") were killed in the attack. Juanricus
> Kibby and Miquel Williams suffered bullet wounds but recovered.
>
> [*P4]  The case went to trial on October 28, 2013. At the trial, both
> surviving victims identified White as one of the two shooters. In
> addition, another witness, Jeffrey Harris, testified that White had
> told him beforehand about White's plan to rob the house and then
> afterwards offered Harris a share of the money. Kibby and Williams
> both had known White for a long time; yet, neither identified him
> the first time they spoke with police following the shooting. Harris,
> who was initially suspected of having some involvement in the
> crime, went to the police to clear his name, but he did not tell the
> police the story he told at trial about White telling him of his plan to
> rob the house.
>
> [*P5]  White's co-defendant presented an alibi witness, who
> claimed that the codefendant was not present during the shooting.
> White admitted that he was at the house and shot some of the people
> there. However, he claimed that he shot in self-defense because,
> when he arrived to buy drugs, the four individuals who were
> subsequently deemed to be the victims, made him get on his knees

at gunpoint and were robbing him. Forensic evidence regarding the direction and angles from which some of the victims were shot tended to contradict White's version of the events, as did the fact that White and the other shooter each fired at least six times and the four victims did not return fire. Thompson was shot as if he were getting up from a seated position, and Paxton was shot in the back shoulder. Only two guns were used in the shooting and neither were any of the guns in the possession of the house occupants.

[*P6]  On November 5, 2013, the trial concluded, and the jury began its deliberations.  Two days later, the jury announced its verdict. The jury found White guilty on all counts. The trial court also found White guilty of having a weapon while under disability. The trial court held a sentencing hearing on January 22, 2014 and sentenced White to life in prison without parole.

(Stipulation, ECF No. 55-1, quoting *State v. White,* 2015-Ohio-5365 (Ohio App. 10ᵗʰ Dist. Dec.

22, 2015).

The parties have further stipulated:

On or about October 18, 2012, the petitioner, Vincent D. White, retained defense counsel, Javier H. Armengau. Mr. Armengau represented the petitioner from that time throughout petitioner's trial and sentencing and did not represent any other co-defendant involved in the crimes alleged against the petitioner

On April 4, 2013, Javier H. Armengau, was arrested, and that arrest led to an indictment on eighteen offenses on May 20, 2013, including six counts of rape, three counts of kidnapping, five counts of sexual battery, three counts of sexual imposition, and public indecency. At the time of the arrest for these offenses, Mr. Armengau was licensed to practice law in Ohio; the women who accused him of sexual misconduct were clients or relatives of clients. Two of the accusers also worked in Mr. Armengau's law offices. Mr. Armengau was convicted of one count of rape, one count of kidnapping, four counts of sexual battery, two counts of gross sexual imposition, and a count of public indecency on July 7, 2014. The trial court, on August 28, 2014, sentenced Mr. Armengau to a total of 13 years confinement. These facts were determined by the Ohio Court of Appeals in *State v. Armengau,* Tenth App. Dist. No. 14AP-679, 2017 Ohio App. LEXIS 2501, 2017 Ohio 4452 (June 22, 2017).

Mr. Armengau disclosed to the petitioner, Vincent D. White, that he

3

(Armengau) had been indicted and was pending prosecution in the same jurisdiction where White was being prosecuted. Mr. Armengau made this disclosure at or around the time of his (Armengau's) indictment during the time period May-June 2013. The petitioner, Vincent D. White, understood that his defense counsel was being prosecuted in the same jurisdiction where he (White) was being prosecuted. Mr. White kept the attorney-client relationship with Mr. Armengau because Mr. Armengau was an aggressive defense counsel and because Mr. Armengau's fee had already been paid. Mr. Armengau did not advise Mr. White that Armengau's pending charges could arguably constitute a conflict of interest. Mr. White did not consult any other attorney at any time during his (White's) trial and sentencing. Mr. White was sentenced prior to Mr. Armengau's trial.

Mr. White's new attorney on direct appeal advised Mr. White that Mr. Armengau's pending charges could arguably have constituted a conflict of interest. Counsel on direct appeal presented that argument to the Ohio Court of Appeals.

(Stipulation, ECF No. 55-1, PageID 1751-52).

As indicated, White raised the conflict of interest issue on direct appeal and the Tenth District dealt with it as follows:

### A. First Assignment of Error — Whether White was Deprived of the Right to Conflict-Free Counsel in Violation of the Sixth Amendment

 [*P9]  White asserts that, at the time of the trial, his trial attorney, Javier Armengau, was under indictment in Franklin County and facing very grave challenges to his own freedom, finances, and license to practice law. White argues that this situation created a conflict of interest. That is, White suggests that Armengau would have been conflicted over whether to devote time to preparing his own defense or that of his client; Armengau might have chosen to take a greater percentage of White's financial resources in fees to help finance his own defense rather than hire an investigator in White's case; and Armengau would have been reluctant to vigorously represent White for fear of angering the same prosecutor's office that was prosecuting him, or even, conversely, might have failed to engage in any plea-bargaining efforts in White's case out of an indignant or vengeful desire to gain a victory over the prosecutor's office.

4

[*P10]  White argues that there is nothing in the record to show that he was properly advised of the potential conflict of interest or that he waived this potential for conflict on the record or in writing. Plaintiff-appellee, State of Ohio, argues that there is no information in the record of this case regarding Armengau's indictment, conviction, or disciplinary proceedings. No. 14AP-160 5

[*P11]  "'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" *Morgan v. Eads,* 104 Ohio St.3d 142, 2004-Ohio-6110, P 13, 818 N.E.2d 1157, quoting *State v. Ishmail, 5*4 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Though White's brief asserts facts about Armengau's difficulties, the record in this direct appeal contains no evidence or information whatsoever about Armengau's particular situation. Although White refers to the caption of Armengau's criminal case and the caption of his disciplinary case before the Supreme Court of Ohio, he does not expressly request that we take judicial notice of the same. Nevertheless, even if we were to take judicial notice of the fact that Armengau was indicted for a number of serious criminal offenses before White's trial and was convicted and imprisoned for them after White's trial, the record would still be devoid of any factual details regarding Armengau's licensure issues. Furthermore, there is nothing in the record of this direct appeal indicating White was unaware of Armengau's situation. In short, while we understand White's argument, that his counsel may have been distracted and conflicted by the fact that he was suffering severe legal and personal difficulties at the same time that he was engaged in litigating White's murder trial, we lack the necessary facts to fully consider such a matter in a direct appeal. A direct appeal, where the record is limited and where the record contains no mention of any of the relevant facts at issue, is not the vehicle to make such an argument.

*State v. White, supra.*

White asserts he could not have raised the conflict of interest issue in a post-conviction petition under Ohio Revised Code § 2953.21 because the time for filing such a petition had expired while his appeal was pending (Petitioner's Brief, ECF No. 57, PageID 1761, citing the Sixth Circuit's decision which found the time for filing a post-conviction expired four months before the Tenth District's decision on direct appeal. 940 F.3d at 273).

5

To show the Ohio courts' rejection of White's eventual post-conviction petition as untimely, the Sixth Circuit writes "After initiating his federal habeas petition, but before receiving a decision, White filed a motion seeking post-conviction relief in state court, also pro se, but his filing came almost two years after the deadline to seek such relief. The trial court, unsurprisingly, dismissed White's motion as untimely."  972 F.3d at 273-74, citing *State v. White*, No. 17AP-538, slip op., 2017-Ohio-8750 (Franklin Cty. Ct. of Common Pleas, Nov. 30, 2017).  However, the cited case does not involve **Vincent** White, Petitioner here, (convicted of shooting four people on July 29, 2012), but **Marcus** White (convicted of shooting his wife and mother-in-law on October 12, 2003).

It is proper for a federal court to take judicial notice of the online records of another court. *Graham v. Smith*, 292 F. Supp. 2d 153, 155, n.2 (D. Me. 2003); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 (E.D. Mich. 2004). The Magistrate Judge has examined the docket of the Franklin County Court of Common Pleas in Petitioner's case[1] and finds that he filed a Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 on October 11, 2017 (Notice of Expansion of State Court Record, ECF No. 61[2], PageID 1817-44).  The trial judge denied the Petition because it was found to be more than two years late. *Id.* at PageID 1813-14.  The Tenth District Court of Appeals denied leave to file a delayed appeal because White waited more than ninety days to appeal. *Id.* at PageID 1815-16.  Thus regardless of how the confusion with the Marcus White case arose, the Sixth Circuit is correct that the Ohio courts rejected White's post conviction petition raising his conflict of interest claim because it was untimely.

Respondent argued to the Sixth Circuit that White's failure to timely file for post-

---

[1] Available at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/.  Visited March 5-6, 2021.
[2] The Magistrate Judge has *sua sponte* expanded the record in this Court by adding White's Petition for Post-Conviction Relief, the trial judge's denial, and the Tenth District's affirmance.  Also added is Respondent's Motion to the Sixth Circuit to take judicial notice of these documents.

conviction relief procedurally defaulted this claim. Applying *Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986), the Sixth Circuit found:

> The trial court's dismissal of White's motion for post-conviction
> relief easily satisfies the first three prongs of the *Maupin* test. Ohio
> law contains a statutory deadline for collateral relief, which requires
> petitioners to file a motion for post-conviction relief within one year
> of the filing of transcripts in the petitioner's direct appeal. Ohio Rev.
> Code § 2953.21(A)(2). The parties do not contest that White failed
> to meet this deadline or that his untimeliness was the basis of the
> trial court's rejection of his claim and the denial of his motion for
> leave to appeal. See *State v. White,* No. 17AP-538, slip op., 2017-
> Ohio-8750 (Franklin Cty. Ct. of Common Pleas, Nov. 30, 2017).
> And, a denial of post-conviction relief based on the petitioner's
> untimeliness is an independent and adequate state ground to
> establish default. See, e.g., *Walker v. Martin*, 562 U.S. 307, 317, 131
> S. Ct. 1120, 179 L. Ed. 2d 62 (2011); *Hartman v. Bagley*, 492 F.3d
> 347, 357-58 (6th Cir. 2007).

940 F.3d at 275.

Nonetheless, the circuit court concluded White had not procedurally defaulted his conflict

of interest claim by applying *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S.

413 (2013), to this case:

> Ohio's procedural framework effectively "channel[ed] initial review
> of [White's] constitutional claim to collateral proceedings." Id. at
> 423. Accordingly, under the *Martinez-Trevino* framework, we find
> that White has cause to overcome his procedural default because: he
> raised a substantial ineffective-assistance claim; he was without
> counsel during his post-conviction proceedings; the post-conviction
> proceeding was the initial opportunity for a merits assessment of the
> claim; and the design and operation of Ohio procedural law rendered
> it "highly unlikely" his claim could be reviewed on direct appeal.
> Because we find that White has cause, he satisfies the fourth prong
> in *Maupin* and is not barred from raising his claim of ineffective
> assistance based on Armengau's conflict of interest. See *Maupin*,
> 785 F.2d at 138; see also *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th
> Cir. 2013) (en banc) (concluding that after finding cause under
> Martinez, the trial court can continue to the merits of a petitioner's
> ineffective-assistance-of-trial-counsel claims); see also *Workman v.*

> *Superintendent Albion SCI*, 915 F.3d 928, 940 (3d Cir. 2019)
> (same).

940 F.3d at 278.  The Court then remanded the case "for the district court to consider, in the first instance, White's claim *de novo*, including whether he is entitled to an evidentiary hearing in order to supplement the record." *Id.* at 279.

These terms of remand at least implicitly elide the question whether *Cullen v. Pinholster*, 563 U.S. 170 (2011), would preclude such a hearing.  The parties have further avoided that question by stipulating to facts to be considered in addition to those that were before the Tenth District.  But see *Moore v. Mitchell*, 708 F.3d 760, 780-784 (6th Cir. 2013).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  However in this case the cited principle does not apply because the Sixth Circuit has in effect held the Tenth District's decision was not "on the merits" as required by § 2254(d)(1) because White had not had a chance to develop the relevant factual record.  Accordingly, the Magistrate Judge's analysis of whether White's conviction is unconstitutional is not limited to considering "clearly established law" from holdings of the United States Supreme Court.

**Positions of the Parties**

        **Petitioner's Brief**

White asserts his continued imprisonment violates clearly established federal law as enunciated in *Glasser v. United States*, 315 U.S. 60 (1942), *Holloway v. Arkansas*, 435 U.S. 475 (1978), and *United States v. Cronic*, 466 U.S. 648 (1984)(Petitioner's Brief, ECF No. 57, PageID 1760).  He asserts this case authority establishes the conflict was a structural error not subject to harmless error analysis. *Id.* at PageID 1762.  He seeks issuance of a conditional writ to require his release unless he is convicted at a new trial within a limited period of time.

White now admits, per the Stipulation, that Armengau told White he had been indicted, "but he did not advise Mr. White of the conflict of interest that arose by representing himself and Mr. White simultaneously". *Id.*, citing Stipulation at PageID 1752.  No attorney advised him of the conflict of interest issue until it was brought to his attention by his appellate counsel. *Id.*

White argues that the conflict of interest which occurs when one's attorney has been indicted is "palpable, well-settled, and universally recognized." *Id.* at PageID 1762.  He relies on *Glasser* and *Cronic* for the proposition that the error is structural and on *Holloway* for the proposition that a defendant need not show he was prejudiced by the conflict. *Id.* at PageID 1763.

White describes the nature of the conflict as follows:  Armengau was "negotiating on behalf of Mr. White with the Franklin County prosecutor at the very time that he was negotiating with that prosecutor on behalf of himself." *Id.* at PageID 1764.  White argues he did not waive the conflict because "[n]o one advised Mr. White -- a prisoner untrained in the law -- that he had a right, under the U.S. Constitution, to representation by unconflicted counsel." *Id.* at PageID 1765.

**Respondent's Brief**

Respondent reminds the Court that it is an ineffective assistance of trial counsel claim that

we are reviewing (Respondent's Brief, ECF No. 58, PageID 1773).  That claim was added to this

case as Ground Five by amendment and reads as follows:

> **GROUND FIVE:** Petitioner was deprived of his right to the
> effective assistance of counsel in violation of the Fifth, Sixth and
> Fourteenth Amendments to the United States Constitution based
> upon the actual conflicts of interests the Petitioners trial counsel
> had in this case.
>
> **SUPPORTING FACTS:** Unbeknown to the Petitioner, and at the
> time of Petitioner's trial in October/November of 2013, his trial
> counsel, (Javier Armengau), was under indictment in case no. 13CR
> - 2217 for eighteen serious offenses including: six counts of rape,
> three counts of kidnapping, five counts of sexual battery, three
> counts of gross sexual imposition and one count of public
> indecency. He was arrested for some of the criminal offenses in
> April 2013, and was indicted on the eighteen counts on May 20,
> 2013. Before he was convicted and sentenced to thirteen years of
> imprisonment on August 26, 2014.

(Amendment, ECF No. 7, PageID 39).  Respondent also notes that White and Armengau were

prosecuted by different attorneys, White by the Franklin County Prosecuting Attorney and

Armengau by special counsel appointed by the Ohio Attorney General (Respondent's Brief, ECF

No. 58, PageID 1777).

Respondent first argues that White has waived any conflict of interest claim because he

knew of Armengau's indictment and decided to keep him on the case anyway. *Id.* at PageID 1781-

84.  He then asserts the case does not involve structural error and White must show deficient

performance and actual prejudice instead. *Id.* at PageID 1785-88.  To prevail, Respondent claims,

White must show an actual conflict of interest and has not done so.  *Id.* at PageID 1788-96, citing

10

*Wood v. Georgia,* 450 U.S. 261, 271-274 (1981), *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980); *Moss v. United States,* 323 F.3d 445, 473 (6th Cir. 2003); and *Smith v. Cook,* 956 F.3d 377, 392-393 (6th Cir. 2020). Finally Respondent argues White has shown neither deficient performance nor that the result would likely have been different with different counsel (Respondent's Brief, ECF No. 58, PageID 1796-97).

**Petitioner's Reply Brief**

White replies that Respondent has not shown he meets the well-accepted standard for waiver: intentional relinquishment of a known right (Reply Brief, ECF No. 59, PageID 1800). He discounts the State's attempts to distinguish *United States v. DeFalco*, 644 F.2d 132 (3d Cir. 1979) and *United States v. Levy*, 25 F.3d 146 (2d Cir. 1994)[3]. *Id.* at PageID 1801-02. He asserts "*Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *Mickens v. Taylor*, 535 U.S. 162 (2002), relied upon by the State in its brief, are inopposite [sic]." *Id.* He concludes "[t]he existence of the concurrent conflict of interest obviates any requirement for Mr. White to demonstrate prejudice, as clearly stablished by the Supreme Court in *Holloway*, *Glasser*, *Cronic*, *Cuyler*, and *Mickens*." *Id.* at PageID 1803.

# Analysis

White's Fifth Ground for Relief, quoted above, is that he received ineffective assistance of trial counsel. The governing standard for ineffective assistance of counsel is found in *Strickland*

---

[3] He also complains "the State fails to mention, much less discuss, the relevant, specific language in the seminal treatise in this area of the law, Gershman's Criminal Trial Error and Misconduct, cited by Mr. White." *Id.* at PageID 1801.

*v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184

(1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing

*Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*,

466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

White claims that Armengau's continuation as his trial attorney after Armengau was indicted constitutes a structural error such that he does not have to prove prejudice. The Supreme Court has "found structural error only in a very limited class of cases." *Hereford v. Warren*, 536 F.3d 523 (6th Cir. 2008), citing *Johnson v. United States,* 520 U.S. 461, 468 (1997). "*Most constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness. Only the rare type of error – in general, one that '[infect] [s] the entire trial process' and 'necessarily render[s] [it] fundamentally unfair' requires automatic reversal." *Glebe v. Frost*, 574 U.S. 21 (2014), citing *Neder v. United States*, 527 U.S. 1, 8 (1999).

One such structural error is denial of counsel at a "critical stage" of the criminal

proceedings, entitling the defendant to a new trial without a specific showing of prejudice because the error makes "the adversary process itself presumptively unreliable." *United States v. Cronic,* 466 U.S. 648, 659 (1984).  But White was not denied representation by counsel of his choice at any stage of the proceedings.[4]  What happened here is only a denial of counsel at a critical stage if one accepts the proposition that having an attorney with a potential conflict of interest of the type that occurred here is *ipso facto* a denial of counsel.

Where a criminal defendant can prove that his attorney actively represented actual conflicting interests, ineffectiveness will be found and there is no need to show prejudice resulting from the conflict.  *Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Thomas v. Foltz*, 818 F.2d 476 (6ᵗʰ Cir. 1987).  The burden of proof of actual conflict is on the Petitioner.  *Cuyler*, *supra*.  The conflict must be actual and significant.  *Thomas,* 818 F.2d at 481.  The presumed prejudice standard of *Cuyler* is clearly established only when the conflict is due to multiple concurrent representations. *Mickens v.  Taylor*, 535 U.S. 16 (2002).  Armengau did not represent multiple clients in this case who had conflicting interests; indeed, he did not represent multiple clients at all.  Nor did White's interests conflict with those of a prior client such that Armengau might have been tempted to breach the confidentiality he owed the prior client.

*United States v. DeFalco*, 644 F.2d 132 (3ʳᵈ Cir. 1979), relied on by White, was an action under 28 U.S.C. § 2255[5].  The court held that the Sixth Amendment was violated "when counsel, while representing appellant on a direct criminal appeal, was himself under indictment and had entered into a plea bargain, during the pendency of the appeal, in the same federal district court from which the appeal was taken." *Id.* at 133.  Further, it said,

---

[4] Note that Armengau was retained, not appointed.  Although the Sixth Amendment requires effective representation regardless of fee, it is significant that White chose Armengau.

[5] Although this case is brought under 28 U.S.C. § 2254 because a state conviction is involved, the Sixth Amendment standards are the same.

> We conclude that inherent emotional and psychological barriers created an impermissible potential of preventing appellate counsel from competing vigorously with the government. The totality of the circumstances presented here, including the facts that DeFalco's appeal emanated from the same district court in which his attorney was indicted, that three of his attorney's indictments were processed, prior to the striking of the plea bargain, before the same district judge who presided over DeFalco's trial, that the same United States Attorney's office prosecuted DeFalco and his lawyer, and that Verdiramo entered into plea bargaining during the pendency of DeFalco's appeal with the same United States Attorney's office that constituted his adversary on appeal, presents, under the rule of *Hart*[6], "a possible conflict of interest or prejudice, however remote." [footnote omitted] We are persuaded that, even without proof of actual conflict of interest, legitimate decisions of counsel were rendered suspect because of the potential for conflicting loyalties to himself and to his client and because, as we have heretofore observed, a reviewing court cannot reliably determine to what extent the decisions were based on legitimate tactical considerations and to what extent they were the result of impermissible considerations. We therefore hold as a matter of law that the standard of normal professional competence cannot have been achieved by appellant's counsel.

*Id.* at 136-37. The court did not grant relief, but remanded for a hearing on whether DeFalco knew of his lawyer's indictment and nonetheless acquiesced in the representation. *Id.* Here of course White knew of Armengau's indictment and expressed strongly his desire to keep Armengau on the case.

The cited opinion in *DeFalco* is only a plurality opinion; one judge concurred in the judgment and four dissented. As a Third Circuit decision, it would not be binding precedent here even if Judge Aldisert's opinion had commanded a majority. More importantly, it was handed down well before the Supreme Court decisions in *Cuyler, Strickland,* and *Mickens* which must guide this Court's decision. Finally, *DeFalco* is distinguishable because he and his attorney were being prosecuted by the same prosecutor before the same judge; neither of those facts applies here.

---

[6] *United States ex rel Hart v. Davenport,* 478 F.2d 203, 210 (3d Cir. 1973).

White also relies on *United States v. Levy,* 25 F.3d 146 (2d Cir. 1994).  In that case Chaim

Levy and his nephew Eliahu Levy were co-defendants in a drug trafficking case, both represented

by Attorney Ian Fisher.  The Second Circuit noted four conflict of interest issues and applied its

own precedent from *Winkler v. Keane*, 7 F.3d 3014 (2nd Cir. 1993), where it held:

> if a defendant establishes that her attorney has a potential conflict of
> interest, in order to prove that the conflict resulted in a violation of
> her Sixth Amendment right to effective assistance of counsel, she
> must demonstrate prejudice. However, prejudice is presumed when
> a defendant establishes that her attorney had an actual conflict of
> interest that adversely affected the attorney's performance. . . An
> attorney has an actual, as opposed to a potential, conflict of interest
> when, during the course of the representation, the attorney's and the
> defendant's interests 'diverge with respect to a material factual or
> legal issue or to a course of action.'" 7 F.3d at 307 (quoting *Cuyler*,
> 446 U.S. at 356 n.3).

The *Levy* Court found there were actual conflicting interests between Chaim and Eliahu in that

Attorney Fisher bargained for advantage for one for them by trying to get the other to cooperate

with the Government.  An actual conflict also arose from the Government's investigation of Fisher

for helping the nephew escape to Israel.  Fisher was also a potential rebuttal witness and apparently

averred he would not be called so that he could maintain his position as trial attorney.  Finally,

Fisher was a defendant in an unrelated criminal case.  The Second Circuit concluded "Fisher may

have believed he had an interest in tempering his defense of Levy in order to curry favor with the

prosecution, perhaps fearing that a spirited defense of Levy would prompt the Government to

pursue the case against Fisher with greater vigor." 25 F.3d at 156.  All of these circumstance, taken

together, warranted a conclusion of actual conflict.  *Id.* at 157.  But under *Keane*, the actual conflict

alone did not warrant a new trial.  Instead, Levy was also required to show an adverse effect, which

the Second Circuit found in Levy's failure to pursue a trial strategy of shifting the blame to the

nephew.  *Id.* at 157.

16

The factors at work in *Levy* do not map onto this case.  Aremengau never represented anyone else in White's case.  His own criminal case was being pursued by a special prosecutor designated by the Attorney General, an office politically and institutionally quite separate from the Franklin County Prosecuting Attorney.

Finally, White relies on Gershman's Criminal Trial Error and Misconduct.  Gershman writes:

> A criminal defendant has a right under the Sixth Amendment to be represented by an attorney whose loyalties are undivided. [footnote omitted] To prove that an attorney has conflicted loyalties, a defendant must demonstrate that his attorney labors under an actual conflict of interest, and that there was a lapse of representation resulting from that conflict. [footnote omitted] To prove a lapse of representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not because the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

§3-5(a).  Having considered this portion of Gershman's treatise, the Magistrate Judge finds it in no way contrary to the analysis offered here.[7]

White has not shown any adverse impact on Armengau's representation arising from the potential conflicts White raises.  What should Armengau have done differently that he did not do because he had a conflict and what difference would it have made?  Without persuasive answers to those questions, White has not established his case.

---

[7] As for Gershman's treatise being a "seminal" work in criminal procedure, the undersigned has sat as a criminal court judge for more than forty years and had never heard of this treatise until it was cited here.  More likely candidates for that label would be Sir Matthew Hale's Pleas of the Crown or perhaps Joel Prentiss Bishop on Criminal Procedure, relied on by Justice Scalia in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

17

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein, as amended by the addition of Ground Five, be dismissed with prejudice.

The issues raised here are sufficiently complex and not governed by close-fitting and binding precedent. On that basis, the Magistrate Judge believes White deserves encouragement to proceed further and recommends a certificate of appealability be issued.

March 8, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.