# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

VINCENT D. WHITE, JR.,

        Petitioner,

- vs -

WARDEN, Ross
  Correctional Institution,

        Respondent.

Case No. 2:17-cv-325

District Judge James L. Graham
Magistrate Judge Michael R. Merz

## DECISION AND ORDER

    This habeas corpus case is before the Court on remand from the Sixth Circuit. *White v. Warden,* 940 F.3d 270 (6th Cir. 2019). The remand directed this Court to consider *de novo*[1] White's Fifth Ground for Relief, to wit, that he suffered ineffective assistance of trial counsel because his trial attorney Javier Armengau labored under a conflict of interest.

    The Magistrate Judge has filed a Report and Recommendations and Supplemental Report and Recommendations on the remanded issue (Original Report, ECF No. 62; Supplemental Report, ECF No. 66). Petitioner has objected to both Reports (ECF Nos. 63, 64, 67, and 68).

    Whenever a litigant objects to a Magistrate Judge's report and recommendations, the District Judge is obliged to review *de novo* those portions of the report to which substantial objection has been made. Fed.R.Civ.P. 72(b)(3). This Decision is the result of that *de novo* review

---

[1] The circuit court found this Court had incorrectly applied the deferential standard of review under AEDPA. See Opinion and Order, ECF No. 23, PageID 1602. The AEDPA standard, codified at 28 U.S.C. § 2254(d), applies only when the state courts have decided the relevant constitutional issue on the merits which did not happen in this case.

1

and also consideration of White's Fifth Ground for Relief without deference to any state court decision under 28 U.S.C. § 2254(d).

As the parties have stipulated (ECF No. 55-1), the facts of the underlying crimes were reported by the Ohio Tenth District Court of Appeals:

> [*P2] On August 30, 2012, a Grand Jury indicted White and an alleged coconspirator. The Grand Jury charged White with one count of aggravated burglary, three counts of aggravated robbery, four counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, and one count of possessing a firearm while under disability. All counts (except the weapon under disability count) contained specifications for the use of a firearm.
>
> [*P3] The counts in the indictment arose from a single incident. On July 29, 2012, four men were shot in a house located at 1022 East 17th Avenue in Columbus, Ohio. Keith Paxton (aka "Gutter") and Albert Thompson (aka "T") were killed in the attack. Juanricus Kibby and Miquel Williams suffered bullet wounds but recovered.
>
> [*P4] The case went to trial on October 28, 2013. At the trial, both surviving victims identified White as one of the two shooters. In addition, another witness, Jeffrey Harris, testified that White had told him beforehand about White's plan to rob the house and then afterwards offered Harris a share of the money. Kibby and Williams both had known White for a long time; yet, neither identified him the first time they spoke with police following the shooting. Harris, who was initially suspected of having some involvement in the crime, went to the police to clear his name, but he did not tell the police the story he told at trial about White telling him of his plan to rob the house.
>
> [*P5] White's co-defendant presented an alibi witness, who claimed that the codefendant was not present during the shooting. White admitted that he was at the house and shot some of the people there. However, he claimed that he shot in self-defense because, when he arrived to buy drugs, the four individuals who were subsequently deemed to be the victims, made him get on his knees at gunpoint and were robbing him. Forensic evidence regarding the direction and angles from which some of the victims were shot tended to contradict White's version of the events, as did the fact that White and the other shooter each fired at least six times and the four victims did not return fire. Thompson was shot as if he were getting up from a seated position, and Paxton was shot in the back shoulder. Only

two guns were used in the shooting and neither were any of the guns in the possession of the house occupants.

[*P6] On November 5, 2013, the trial concluded, and the jury began its deliberations. Two days later, the jury announced its verdict. The jury found White guilty on all counts. The trial court also found White guilty of having a weapon while under disability. The trial court held a sentencing hearing on January 22, 2014 and sentenced White to life in prison without parole.

*State v. White,* 2015-Ohio-5365 (Ohio App. 10th Dist. Dec. 22, 2015).

The central issue in this case, as White now frames it, is whether White's retained defense counsel, Javier Armengau, labored under a conflict of interest that requires an automatic reversal of White's conviction (Brief in Support of Objections to Supplemental Report, ECF No. 68, PageID 1888). The parties have stipulated to the following facts regarding that representation:

> On or about October 18, 2012, the petitioner, Vincent D. White, retained defense counsel, Javier H. Armengau. Mr. Armengau represented the petitioner from that time throughout petitioner's trial and sentencing and did not represent any other co-defendant involved in the crimes alleged against the petitioner.
>
> On April 4, 2013, Javier H. Armengau, was arrested, and that arrest led to an indictment on eighteen offenses on May 20, 2013, including six counts of rape, three counts of kidnapping, five counts of sexual battery, three counts of sexual imposition, and public indecency. At the time of the arrest for these offenses, Mr. Armengau was licensed to practice law in Ohio; the women who accused him of sexual misconduct were clients or relatives of clients. Two of the accusers also worked in Mr. Armengau's law offices. Mr. Armengau was convicted of one count of rape, one count of kidnapping, four counts of sexual battery, two counts of gross sexual imposition, and a count of public indecency on July 7, 2014. The trial court, on August 28, 2014, sentenced Mr. Armengau to a total of 13 years confinement. These facts were determined by the Ohio Court of Appeals in State v. Armengau, Tenth App. Dist. No. 14AP-679, 2017 Ohio App. LEXIS 2501, 2017 Ohio 4452 (June 22, 2017).
>
> Mr. Armengau disclosed to the petitioner, Vincent D. White, that he (Armengau) had been indicted and was pending prosecution in the same jurisdiction where White was being prosecuted. Mr.

3

> Armengau made this disclosure at or around the time of his (Armengau's) indictment during the time period May-June 2013. The petitioner, Vincent D. White, understood that his defense counsel was being prosecuted in the same jurisdiction where he (White) was being prosecuted. Mr. White kept the attorney-client relationship with Mr. Armengau because Mr. Armengau was an aggressive defense counsel and because Mr. Armengau's fee had already been paid. Mr. Armengau did not advise Mr. White that Armengau's pending charges could arguably constitute a conflict of interest. Mr. White did not consult any other attorney at any time during his (White's) trial and sentencing. Mr. White was sentenced prior to Mr. Armengau's trial.
>
> Mr. White's new attorney on direct appeal advised Mr. White that Mr. Armengau's pending charges could arguably have constituted a conflict of interest. Counsel on direct appeal presented that argument to the Ohio Court of Appeals.

(Stipulation, ECF No. 55-1, PageID 1751-52).

As the Sixth Circuit found, the Tenth District Court of Appeals declined to decide this issue on the merits, finding it depended on facts outside the appellate record which, under Ohio law, must be presented by petition for post-conviction relief under Ohio Revised Code § 2953.21. *State v. White, supra,* ¶¶ 9-11. By the time the Tenth District reached this conclusion, White's time to file a post-conviction petition had expired and his later attempt to do so was dismissed as untimely, as the Sixth Circuit also found. *White v. Warden,* 940 F.3d at 273-74.

On appeal from this Court's judgment, the Warden urged that the claim was procedurally defaulted because of the untimely filing. The Sixth Circuit, however, applying to Ohio for the first time the Supreme Court's decision in *Trevino v. Thaler*, 569 U.S. 413 (2013), concluded White had shown excusing cause for the default – lack of counsel in post-conviction -- and remanded the case "for the district court to consider, in the first instance, White's claim *de novo*, including whether he is entitled to an evidentiary hearing in order to supplement the record." 940 F.3d at 279.

4

Remand was effective when the Sixth Circuit issued its mandate on June 11, 2020, (ECF No. 43), a week after the Supreme Court of the United States denied the State's petition for writ of certiorari. *White v. Morgan*, 140 S. Ct. 2826 (Jun. 1, 2020). A week later the Warden moved to expand the record:

> In order to demonstrate that White was fully aware of his retained counsel's pending prosecution and that White deliberately chose to continue to retain his counsel, Xavier Armengau, for White's trial, respondent will offer a record of telephone calls from White from the jail to various persons outside the jail at the time just prior to White's trial in the Franklin County Court of Common Pleas.

(Motion, ECF No. 42, PageID 1692). In September, 2020, the Court[2] granted the State's motions to expand and for evidentiary hearing, which Petitioner had not opposed (Order, ECF No. 54). However, in lieu of an evidentiary hearing to develop the factual record on the remanded issue, as the circuit court apparently anticipated, the parties entered into a Stipulation (ECF No. 55-1) and then briefed the case (ECF Nos. 57-59).

In addition to the stipulated facts about the representation, Magistrate Judge Merz relied on the materials added to the record on the Warden's unopposed motion to expand the record. White objects strenuously to that reliance, claiming those records of White's telephone calls from the jail were somehow withdrawn. Upon a *de novo* review of the Joint Motion to Vacate (ECF No. 55), the Stipulation (ECF No. 55-1), and Magistrate Judge Vascura's Order granting the Motion to Vacate the evidentiary hearing (ECF No. 56), the Court finds no mention of withdrawing those records, whose addition to the record in this case Petitioner did not oppose.

---

[2] Per Magistrate Judge Chelsey M. Vascura, to whom the case was at that time referred. The Magistrate Judge reference in the case was later transferred to Magistrate Judge Merz to help balance the Magistrate Judge workload in the District.

### White's Truthfulness in Pleading Ground Five

Based on the Stipulation and the records of jail telephone calls, Magistrate Judge Merz found that White lied to this Court when he represented in his Fifth Ground for Relief that "[u]nbeknown to the Petitioner, and at the time of Petitioner's trial in October/November of 2013, his trial counsel, (Javier Armengau), was under indictment. . . ." (Supporting Facts for Ground Five, Amendment to Petition, ECF No. 7, PageID 39). The basis for finding that this was a lie is (1) the verified admission by White in the Stipulation that Attorney Armengau told White when he was indicted and (2) the numerous telephone calls White made from jail in which he admits knowing Armengau had been indicted.

White's counsel objects strenuously to this finding, calling it conjecture by the Magistrate Judge, reliance on uncross-examined prosecutorial affidavits, "highly improper, unlawful, and completely unfair." (ECF No. 68, PageID 1892).

The Court concludes the Magistrate Judge's finding that White lied is not clearly erroneous. That contradiction between "unbeknown to the Petitioner" (Amendment) and "Mr. Armengau disclosed to the petitioner, Vincent D. White, that he (Armengau) had been indicted" (Stipulation) is patent. The Magistrate Judge's finding of what White said on the telephone from jail is based on the transcripts of those calls (ECF No. 44-1, Ex. E); the accompanying declarations, referred to by White's counsel as "uncross-examined prosecution affidavits", are merely authenticating documents. And White has not denied the authenticity of the transcriptions. The admissions he made in those telephone calls occurred in June 2013, four years before he claimed that Armengau's indictment was "unbeknown" to him.

White made this same untrue statement under oath when he filed his Petition for Post-

6

Conviction relief in the Franklin County Court of Common Pleas when he stated:

> I was represented at trial by Javier Armengau. Unknown to me at the time, Mr. Armengau was under indictment at the time for several felony charges including rape and kidnapping. I learned of this fact after my trial. If I would have know [sic] this prior to trial, I would not have allowed him to stay on my case.

(Copy at ECF No. 61, PageID 1829).

Significantly, the Sixth Circuit also believed White did not know of Armengau's indictment. In the first paragraph of her opinion, Judge Daughtrey writes: White "argues that he was deprived of his Sixth Amendment right to effective counsel when, **unbeknownst to him**, his trial attorney, Javier Armengau, represented him while also under indictment for several serious offenses." 940 F. 3d at 272 (emphasis supplied). On the next page Judge Daughtrey also wrote "As White tells it, he did not learn about Armengau's indictment until he began assembling his case for direct appeal" 940 F. 3d at 273.

The Court finds White knew from Armengau, well before trial, that his attorney had been indicted on serious felony charges and chose deliberately to continue the representation. White's objection to the Magistrate Judge's finding that White lied in representing the contrary to this Court is overruled.

**The Conflict of Interest**

The substantive claim before this Court is that White received ineffective assistance of trial counsel because his defense attorney labored under a conflict of interest, he himself having been indicted on serious criminal charges. The Sixth Circuit found that this was a substantial ineffective

assistance of trial counsel claim[3], 940 F.3d at 276, citing *Moss v. United States*, 323 F.3d 445, 472 (6th Cir. 2003); *United States v. DeFalco*, 644 F.2d 132, 136-37 (3d Cir. 1979); *Reyes-Vejerano v. United States*, 276 F.3d 94, 99 (1st Cir. 2002); *Armienti v. United States*, 234 F.3d 820, 824-25 (2d Cir. 2000); and *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992).

In *Moss*, co-defendants claimed in a § 2255 proceeding that their joint representation by the same attorney at trial created an actual conflict of interest. As a general matter the Sixth Circuit held that the prejudice required to be proved by the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984), would be presumed in certain circumstances:

> The presumption of prejudice also arises where the defendant demonstrates that his attorney actively represented conflicted interests. *Mickens*, 122 S. Ct. at 1241-45 (examining with approval *Holloway v. Arkansas*, 435 U.S. 475, 488, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 350, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); and *Wood v. Georgia*, 450 U.S. 261, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981)). Indeed, where the defendant or his counsel objects to the conflict prior to, or during trial, the trial court must inquire as to the extent of the conflict or subject any subsequent conviction to automatic reversal. *Holloway*, 435 U.S. at 489-92. See also *Riggs v. United States*, 209 F.3d 828, 831 n.1 (6th Cir. 2000). In the absence of an objection, however, a showing of (1) an actual conflict; and (2) an adverse effect on his counsel's performance will void the conviction. *Mickens*, 122 S. Ct. at 1245.

323 F.3d at 455. Knowing of Armengau's indictment, White made no objection to proceeding with Armengau as his counsel. Under *Moss*, then, he must prove both an actual conflict and an adverse effect of Armengau's performance.

White has not proven any actual conflict of interest. While he and Armengau both faced charges in the Franklin County Court of Common Pleas, they were before different judges, Judge

---

[3] This finding – that the ineffective assistance of trial counsel claim is substantial – is a necessary predicate to applying the *Martinez-Trevino* exception to the procedural default doctrine as stated in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). See *Martinez*, 566 U.S. at 17.

Holbrook in White's case (see, e.g., Judgment Entry, State Court Record, ECF No. 11-1, Ex. 5) and Judge Fais in Armengau's case (see, e.g,, Decision and Entry, State Court Record in Case No. 2:19-cv-1146, Ex. 4). The General Division of that court comprises seventeen judges, so the likelihood that behavior by an attorney which angered one of those judges would be communicated to another judge handling another case is speculative at best. White was prosecuted by the Franklin County Prosecutor and Armengau was prosecuted by special counsel appointed by the Ohio Attorney General (ECF No. 58, PageID 1777). Both Armengau and White defended their cases on the merits, so there is no indication of possible conflict in plea negotiations.

It is always possible, of course, that an indicted attorney will neglect his criminal clients because he is distracted or because his resources are stretched too thin to defend both cases vigorously. But White offers no evidence that happened in this case.

Nor does White point to any evidence that the posited conflict affected Armengau's performance or that the outcome would have been any different with a different attorney. As the Tenth District summarized the facts of the crime, there were two surviving eyewitness victims who had known White for some time and his self-defense explanation of the shooting was not credible. *State v. White, supra*, at ¶¶ 3-4. Applying the standard enunciated in *Moss*, the Court concludes White has not shown Armengau provided ineffective assistance of trial counsel because of any conflict of interest.

The other decisions cited by the Sixth Circuit are from other circuits. In *Reyes-Vejerano*, the First Circuit noted the possibility of a conflict of interest when an attorney is under investigation by the same federal agency which is prosecuting his client. The court held that under those circumstances:

> A defendant who raises no objection at trial must demonstrate in his
> § 2255 petition that an actual conflict of interest adversely affected

> the adequacy of his representation. *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); *Familia-Consoro*, 160 F.3d at 764. That proof of actual conflict (at least in situations where it is not obvious) has two components, each of which the defendant must show: "(1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests." *Familia-Consoro*, 160 F.3d at 764; see also *Brien v. United States*, 695 F.2d 10, 15 (1st Cir. 1982) (adopting this test).

276 F.3d at 97. The First Circuit found petitioner had shown no actual conflict of interest and affirmed dismissal of his habeas corpus (§ 2255) case. *Reyes-Vejerano* does not support White's theory that an indicted attorney has a *per se* conflict of interest with his client who is being prosecuted in the same court.

In *Armienti v. United States*, 234 F. 3d 820 (2nd Cir. 2000), petitioner alleged ineffective assistance of trial counsel because his attorney was being criminally investigated by the same government office which was prosecuting him. Petitioner did not allege a *per se* conflict of interest or that the trial court was aware of the potential conflict. The Second Circuit held petitioner could prevail if he could prove an actual conflict of interest and "remanded the case to the [district] court for an evidentiary hearing on whether Armienti's attorney's alleged conflict constituted an actual conflict that adversely affected his performance as Armienti's counsel." 234 F.3d at 822. *Armienti* is therefore no authority for the propositions argued by White that (1) there is a *per se* disqualifying conflict of interest when a defense attorney is facing criminal charges in the same court as his client or (2) that the petitioner does not have to show an adverse effect on the attorney's performance.

In *Thompkins v. Cohen,* 965 F.3d 330 (7th Cir. 1992), petitioner was charged with murder and his trial attorney was under investigation for bribing police officers. The Seventh Circuit held

10

this presented only a potential conflict of interest, but even assuming a conflict existed:

> The existence of a conflict does not automatically entitle the defendant to habeas corpus on the ground that he was deprived of his constitutional right to the effective assistance of counsel. Unless the conflict was brought to the trial judge's attention, the defendant must point to specific instances in which the lawyer would have done something different in his conduct of the trial had there been no conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); *United States v. Cirrincione*, 780 F.2d 620, 630-31 (7th Cir. 1985).

965 F.3d at 332. *Thompkins* also does not support relief for White. While the Seventh Circuit recognized the possibility of a conflict of interest in the situation where defense counsel is under criminal investigation, it held the petitioner still had to show something the attorney would have done differently had there been no such conflict. Because Thompkins had not made that showing, the Seventh Circuit affirmed dismissal of the habeas petition. White has also made no such showing.

In the last case referenced by the circuit court, *United States v. De Falco*, 644 F.2d 132 (3rd Cir. 1979), the Third Circuit remanded an indicted defense attorney conflict of interest claim "for a hearing on whether DeFalco knew of his lawyer's indictment and nonetheless acquiesced in the representation." 644 F.2d at 136-37. This Court now knows, by White's Stipulation, that Armengau told him of the indictment and that White acquiesced in the representation.

In addition to the cases cited by the Sixth Circuit as suggestive of a disqualifying conflict of interest here, White relies in his latest Objections on a number of Supreme Court cases:

> The Supreme Court's decisions in *Glasser [v. United States*, 315 U.S. 60 (1942)]; *Holloway [v. Arkansas*, 435 U.S. 475 (1978)]; [*United States v.] Cronic*, 466 U.S. 648 (1984); *Cuyler [v. Sullivan*, 446 U.S. 335 (1980)]; and *Mickens [v. Taylor*, 535 U.S. 16 (2002)] are well-established and clear: the Sixth Amendment requires representation by unconflicted counsel. When a concurrent conflict is present, unless it is waived, "automatic reversal" is required.

(ECF No. 68, PageID 1893).

The Magistrate Judge distinguished *Glasser* as follows:

> In *Glasser* the trial judge on the day of trial appointed the attorney for one defendant to represent a second defendant, over the attorney's protest. It is true the Supreme Court declined to assess whether the defendant was prejudiced, but it did not purport to create a general rule that prejudice need never be shown in such a case. It did not employ "structural" error as an analytical concept. *Glasser* was a case of concurrent representation of two defendants, not an indicted defense counsel situation.

(Supplemental Report, ECF No. 66, PageID 1881, noting also that *Glasser* was decided forty-two years before *Strickland,* the modern font of effective assistance law). *Holloway* also involved concurrent representation of three defendants over counsel's protests. *Id.* at PageID 1882. The Magistrate Judge also found *Cronic* was not in any way a conflict of interest case. *Id. Cuyler* holds the burden of proof of an actual conflict of interest is on the petitioner, a burden White has not met here.

The Supplemental Report notes that *Mickens* holds "[t]he presumed prejudice standard of *Cuyler* is clearly established only when the conflict is due to multiple concurrent representations"; absent concurrent representation of co-defendants, the petitioner is required to show the conflict affected counsel's performance (ECF No. 66, PageID 1882).

White summarizes his reliance on these concurrent representation cases by arguing that the conflict of interest in an indicted attorney case "is GREATER than when he is representing two separate clients with conflicting interests." (Objections, ECF No. 68, PageID 1892; emphasis sic). However White cites no federal case law adopting that position.

Nor is this Court, considering the matter *de novo*, persuaded to adopt such a rule. It would allow a defendant such as White, who knew of the possible conflict and acquiesced in it, to obtain vacation of a conviction without proving either an actual conflict of interest or any adverse effect

on attorney performance or case outcome.

Based on the foregoing analysis, the Report and Recommendations (ECF No. 62) and the Supplemental Report and Recommendations (ECF No. 66) are ADOPTED AND Petitioner's Objections (ECF Nos. 63, 64, 67, and 68) are OVERRULED. The Clerk shall enter judgment dismissing the Petition with prejudice.

**Certificate of Appealability**

A habeas corpus petitioner cannot appeal an adverse judgment without a certificate of appealability. 28 U.S.C. § 2253(c). To obtain a certificate of appealability, a petitioner must show at least that jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or that they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017).

White has cited no cases from any court adopting his positions that (1) there is a *per se* conflict of interest when defense counsel is indicted in the same court where he is defending a petitioner; (2) the indicted defense attorney case is equivalent to concurrent representation of codefendants, requiring automatic reversal. Nonetheless, because this case is on remand from the Sixth Circuit which believed it represented at least a possible case of ineffective assistance of trial counsel because of conflict of interest, White deserves encouragement to proceed further. He is therefore GRANTED a certificate of appealability on the question of whether he has shown a

conflict of interest sufficient to require automatic reversal in the absence of proof the conflict impacted trial counsel's performance.

Date: May 20, 2021

                                                s/James L. Graham
                                               James L. Graham
                                               United States District Judge